**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wells Fargo Bank, National Association, ) | No. CV11-1758-PHX-JAT |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Bruce J. Brickman, individually and as ) Trustee of the Bruce J. Brickman ) Declaration of Trust dated December 20, ) 1991; Gary Weisman, individually and as ) Trustee of the Gary Alan Weisman ) Revocable Living Trust dated March 18, ) 1991, ) | |
| Defendants. ) | |

Pending before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Alternative Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). (Doc. 8). The Court now rules on the motions.

**I.    BACKGROUND**

Defendants are Michigan residents, (Doc. 8 at 3), and Plaintiff is a South Dakota corporation. (Doc. 8 at 5 n.1). Defendants are the sole members of a Michigan limited liability company, Canal Crossing Phoenix #2, LLC ("Canal #2") which is registered to transact business within Arizona. (Doc. 10 at 1-2). On December 13, 2007, Plaintiff agreed to loan Canal #2 money for the purchase of Arizona real estate property. (*Id.* at 2). This loan was conditioned upon Defendants' personal guaranties to repay 50% of the loan. (*Id.*). The

1  negotiations for the loan agreement and the guaranties all took place within Michigan
2  between Defendants and Plaintiff's Michigan employees (Doc. 8 at 4-5; Doc. 14 at 2). The
3  loan agreement and guaranties were executed in Michigan and delivered to Plaintiff's
4  Michigan office. (*Id.* at 3).

5  The documents contain choice of law and jurisdiction provisions. The loan agreement
6  provides that:

> "Borrower and all persons and entities in any manner obligated to Lender under the Loan Documents irrevocably submits to the jurisdiction of: (a) any state or federal court sitting in the State of Michigan over any suit, action, or proceeding, brought by Borrower against Lender, arising out of or relating to the Loan Documents or the Loan; (b) **any state or federal court sitting in the state where the Property is located** or the state in which Borrower's principal place of business is located over any suit, action or proceeding, brought by Lender against Borrower, **arising out of or relating to any of the Loan Documents or the Loan;** (c) any state court sitting in the county of the state where the Property is located over any suit, action, or proceeding, brought by Lender to exercise its power to foreclose the Property or any action brought by Lender to enforce its rights with respect to any other collateral under the Loan Documents . . .

14  (Doc. 8-1 Ex. 1, Ex. B, at 12) (emphasis added). Exhibit B to the loan agreement defines
15  "Loan Documents" and specifically excludes Defendants' guaranties from that definition.
16  (Doc. 14-1 Ex. 1, Ex. B, at 16).

17  Each Defendant's personal guaranty stated:

> This Guaranty shall be governed by, and construed in accordance with, the laws of the State of Michigan, except to the extent preempted by federal laws. Guarantor and all persons and entities in any manner obligated to Lender under this Guaranty consent to the jurisdiction of any federal or state court within the State of Michigan having proper venue and also consent to service of process by any means authorized by Michigan or federal law.

(Doc. 8-1 Ex. 1, Ex. A, at 5). The guaranties do not contain any provisions regarding Defendants' consent to Arizona jurisdiction.

The loan agreement and guaranties were executed on December 13, 2007. (Doc. 8 at 3; Doc. 10 at 2). Defendants regularly travel to Arizona to manage Canal #2's property as well as their other properties, and on March 15, 2011, Defendant Brickman met with Wells Fargo representatives in Arizona to discuss the loan. (Doc. 10 at 2). When Canal #2's loan matured, Defendants failed to honor their personal guaranties and this lawsuit arose. (*Id.* at

- 2 -

1  2).

2  **II.   PERSONAL JURISDICTION**

3      **A.   Burden of Proof**

4  When a defendant moves prior to trial to dismiss a complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the district court determines the method of resolving the jurisdictional issue. *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977). If the parties have submitted only written materials, the plaintiff "must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Id.*

    **B.   Legal Standard**

In the absence of a federal statute governing the existence of personal jurisdiction, a federal court applies the personal jurisdiction law of the state in which the court sits. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th Cir. 1995). Arizona's long-arm statute provides that an Arizona court may exercise personal jurisdiction over a nonresident defendant to the maximum extent permitted under the Due Process Clause of the United States Constitution. ARIZ. R. CIV. P. 4.2(a); *Uberti v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995).

The Due Process Clause requires that a nonresident defendant have certain minimum contacts with the forum state such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted). Due process protects a defendant's "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Omeluk v. Langsten Slip & Batbyggeri*, 52 F.3d 267, 270-71 (9th Cir. 1995) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)).[1]

---

[1] A defendant may also choose to waive his due process rights and consent to personal jurisdiction. *See Burger King*, 471 U.S. at 472 n.14.

Personal jurisdiction may be either general or specific. *See Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414-15 nn.8-9 (1984) (citations omitted). General jurisdiction exists when a defendant has "continuous and systematic" contacts with the forum state. *Id.* at 415 (quoting *Perkins v. Benquet Consol. Mining Co.*, 342 U.S. 437, 445 (1952)); *see also Data Disc*, 577 F.2d at 1287. A state may exercise specific jurisdiction over a defendant lacking continuous and systematic contacts if the controversy is related to or arises out of the defendant's contacts with a forum state. *See Helicopteros Nacionales*, 466 U.S. at 414 (internal quotation omitted). In evaluating whether an exercise of specific jurisdiction is proper, courts focus on the "relationship among the defendant, the forum, and the litigation." *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). The inquiry evaluates the "nature and quality of the defendant's contacts in relation to the cause of action." *Data Disc*, 577 F.2d at 1287.

The Ninth Circuit applies a three-prong test to determine whether a defendant's contacts with the forum state are sufficient enough that an exercise of personal jurisdiction comports with due process. *See Schwarzenegger*, 374 F.3d at 802.

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)); *see also Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). The plaintiff bears the burden of satisfying the first two prongs of this test, *Schwarzenegger*, 374 F.3d at 802, and is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). Once the plaintiff has made this showing, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (citing *Burger King*, 471 U.S. at 476-78).

The first prong of the three-part specific jurisdiction test requires the plaintiff to establish either that the defendant purposefully availed himself of the privilege of conducting activities within the forum state or that he purposefully directed his activities toward the forum state. *Id.* Availment and direction are distinct concepts, with availment being the standard for suits based in contract and direction the standard for suits based in tort. *Id.* A contract with a party from the forum state does not automatically establish sufficient contacts to support personal jurisdiction, *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001), but it is sufficient for due process that "the suit [is] based on a contract which had substantial connection with [the forum state]." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). Along with the terms of the contract, courts look at prior negotiations, the parties' actual course of dealing, and contemplated future consequences in determining whether a defendant purposefully availed himself of the privilege of conducting activities within the forum state. *Doe*, 248 F.3d at 924 (citing *Burger King*, 471 U.S. at 478-79).

The second prong of the Ninth Circuit's test, whether the claim arises out of or relates to the defendant's forum-related activities, is a "but for" test. *Doe*, 248 F.3d at 924; *see also Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). The claim arises out of the defendant's forum-related activities if, but for the contacts between the defendant and the forum state, the cause of action would not have arisen. *Doe*, 248 F.3d at 924.

Once a plaintiff has shown that the first two prongs of the test are satisfied, a court presumes that the exercise of personal jurisdiction is reasonable. *Ballard*, 65 F.3d at 1500 (citing *Sher v. Johnson*, 911 F.2d 1357, 1364 (9th Cir. 1990)). The burden then shifts to the defendant to show a compelling case that the exercise of jurisdiction would be unreasonable. *Id.*; *Schwarzenegger*, 374 F.3d at 802 (citing *Burger King*, 471 U.S. at 476-78). In evaluating the reasonableness of exercising specific jurisdiction over a nonresident defendant, the Ninth Circuit applies a seven-factor test: "(1) the extent of the defendant's purposeful injection into the forum; (2) the defendant's burdens from litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the

1  forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an
2  alternative forum." *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 475 (9th Cir. 1995) (citing
3  *Terracom*, 49 F.3d at 561). All seven factors must be weighed and none alone is dispositive.
4  *Id*; *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993).

### C. Discussion

Plaintiff must make a prima facie showing that Defendants purposefully availed themselves of the privilege of conducting activities in Arizona and that the cause of action in this case arises from Defendants' forum-related activities. As a threshold matter, the Court first addresses Plaintiff's claim that Defendants consented in the terms of the loan agreement to personal jurisdiction in Arizona. (Doc. 10 at 6). The loan agreement provides that "Borrower **and all persons and entities in any manner obligated to Lender under the Loan Documents** irrevocably submits to the jurisdiction of . . . (b) any state or federal court sitting in the state where the Property is located . . ." (Doc. 8-1 Ex. 1, Ex. B, at 12) (emphasis added). The parties to the loan agreement are Plaintiff and Canal #2, not Defendants. (*Id.* at 14). And as Defendants correctly point out, Exhibit B to the loan agreement clearly defines the guaranties as being "not loan documents." (*Id.* at 16). Therefore, the loan agreement subjects Canal #2, but not Defendants, to personal jurisdiction in Arizona. Defendants have not consented to personal jurisdiction in Arizona.

Plaintiff otherwise argues for Defendants' purposeful availment on a variety of facts, implying that taken together, these facts show prior negotiations, the parties' actual course of dealing, and contemplated future consequences. *See Doe*, 248 F.3d at 924. Plaintiff alleges that Defendants' execution of the loan guaranties induced Plaintiff to make the loan to Canal #2 for the purpose of acquiring the property. (Doc 10 at 3-4). Plaintiffs highlight that Canal #2 was formed for the purpose of purchasing the Arizona property, Canal #2 was registered to do business in Arizona, Defendants' ownership of the property causes them to regularly travel to Arizona, and Defendants personally obligated themselves to travel to Arizona to clean up any environmental contamination on the property. (*Id.* at 3-5).

Defendants, on the other hand, seek to distance themselves from the loan agreement

and Arizona, arguing that "the Guarantors did not have any contact with Arizona as it relates to the Guaranties." (Doc. 8 at 5). Defendants assert, without opposition, that the guaranties were negotiated and executed solely in Michigan, and that the guaranty contract is a separate contract from the loan agreement (*Id.* at 3, 6). They bolster their argument with the guaranties' choice of law provisions, in which Defendants consented to jurisdiction in Michigan and agreed that Michigan law would apply. (Doc. 8-1 Ex. 1, Ex. A, at 5); (Doc. 8-1 Ex. 2, Ex. A, at 5). Courts, however, have concluded that the personal guaranties of nonresident defendants may constitute purposeful availment of the privilege of conducting activities within the forum state. *See* Susan M. Kole, *Execution, Outside of Forum, of Guaranty of Obligations Under Contract to Be Performed Within Forum State as Conferring Jurisdiction Over Nonresident Guarantors Under "Long-Arm" Statute or Rule of Forum*, 28 A.L.R.5th 664 (1995).

In *Forsythe v. Overmyer*, 576 F.2d 779 (9th Cir. 1978), the Ninth Circuit found that the personal guaranty of a nonresident defendant constituted purposeful availment of the privilege of conducting transactions within California, and subjected the defendant to personal jurisdiction in California. Defendant Overmyer was a New York resident, sole owner of an Oregon corporation (through his ownership of that corporation's parent), and chief executive officer of the same Oregon corporation. 576 F.2d at 781. Overmyer's Oregon corporation contracted with the California plaintiff for the lease of real property located in Oregon, and the lease contract was negotiated within California. *Id.* at 783. Though he remained in New York, Overmyer personally guaranteed the lease and mailed his guaranty to the plaintiff in California. *Id.* at 781. The lease, but not the guaranty, provided that it would be subject to the jurisdiction of California courts and governed by California law. *Id.* The Ninth Circuit reaffirmed its respect for "corporate boundaries in jurisdictional contexts," but found that Overmyer "interjected himself into the transaction by assuming personal liability in the event of a default on a contract expressly subject to jurisdiction in the California forum." *Id.* at 783.

In *Hamada v. Valley Nat'l Bank*, 555 P.2d 1121 (Ariz. Ct. App. 1976), the Arizona

1  Court of Appeals exercised jurisdiction over a Utah defendant who personally obligated
2  himself to an Arizona bank in connection with that bank's loan to a Utah corporation. 555
3  P.2d at 1122-23. The court held that the execution of the defendant's obligation to buy back
4  shares of stock, performed with the defendant's knowledge that it was to be used in a
5  transaction in Arizona, was sufficient minimal contacts for Arizona to exercise personal
6  jurisdiction. *Id.* at 1124.

7  This Court was confronted with this same issue on nearly identical facts in *Compass*
8  *Fin. Partners L.L.C. v. Unlimited Holdings, Inc.*, No. CV07-1964-PHX-MHM, 2008 WL
9  2945585 (D. Ariz. 2008). There, the plaintiff, a Delaware limited liability company, sued the
10 defendant, a Nevada corporation, for breach of guaranty arising from a loan agreement and
11 guaranty executed in Nevada but concerning real property located in Arizona. 2008 WL
12 2945585, at *1. The loan agreement, note, and guaranty were governed by Nevada law, and
13 the documents provided that the borrower submitted to personal jurisdiction in Nevada. *Id.*
14 In finding no purposeful availment, the Court distinguished *Hamada*, which involved an
15 obligation to an Arizona bank, from the Nevada-based loan between two non-Arizona
16 parties. *Id.* at *5. The Court also rejected the plaintiff's contention that its claim arose out of
17 the purchase of real property, viewing the guaranty as separate from the purchase and
18 concluding that the execution of the guaranty did not consummate any transaction within
19 Arizona sufficient to exercise personal jurisdiction. *Id.*

20 The Court finds the present case distinguishable from *Forsythe* and *Hamada*. Here,
21 the loan agreement, guaranty, and all other loan documents were negotiated and executed in
22 Michigan. In *Forsythe*, California personal jurisdiction was proper because the loan
23 agreement was negotiated in California with a California plaintiff, but here neither party is
24 an Arizona citizen and all negotiations took place in Michigan. And in *Hamada*, the
25 obligation was the buyback of stock from an Arizona bank. Here, the obligation is the
26 payment of a loan between two non-Arizonan parties.

27 The facts of this case are indistinguishable from those of *Compass Financial*. Like in
28 *Compass Financial*, although a purchase of Arizona real property occurred, neither party is

- 8 -

an Arizona citizen. The loan agreement and guaranty apply the law of another state, and they subject the defendants to the jurisdiction of another state. Plaintiff argues that Defendants' guaranties induced it to provide the loan and that this should serve as a basis for establishing jurisdiction. This Court rejected a similar claim in *Compass Financial*, 2008 WL 2945585, at *5, and this Court will do so again. "Plaintiff's claim here does not arise out of the purchase of real property as Plaintiff suggests. Plaintiff's claim arises out of the loan for which the land acts as collateral." *Id.* Because the guaranty and the loan were wholly negotiated in Michigan, contain Michigan choice of law clauses, and subject Defendants to personal jurisdiction in Michigan, Defendants' signing of the guaranty did not constitute purposeful availment of the privilege of conducting activities within Arizona.

Plaintiff has failed to make a prima facie showing of purposeful availment, the first prong of our three-part test for specific personal jurisdiction. Therefore, this Court need not proceed to the remaining two prongs; Plaintiff has not shown that Defendants have sufficient minimum contacts with Arizona such that this Court's exercise of personal jurisdiction would comport with Defendants' due process rights. Because this Court will not exercise personal jurisdiction over Defendants, Defendants' alternative motion for a transfer of venue is moot.

Accordingly,

**IT IS ORDERED** granting Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 8).

**IT IS FURTHER ORDERED** denying Defendants' Alternative Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) as moot. (Doc. 8).

DATED this 27th day of March, 2012.

James A. Teilborg
United States District Judge